GORDON JACKSON AND BREWSTER MOSES, *Plaintiffs in Error*,
v. THE STATE OF FLORIDA, *Defendant in Error*.

Division A.

Opinion Filed May 16, 1927.

Petition for Rehearing Denied June 23, 1927.

1. In preparing a bill of exceptions the testimony should be stated in narrative form and not in the form of a stenographer's report of the testimony. Only that portion of the testimony which because of its ambiguity the trial judge may be satisfied could be better understood by this Court should be preserved in the form of questions and answers. Counsel should not prepare and the Circuit Judge should not certify to a bill of exceptions not prepared in this respect according to the rule.

2. Evidence examined and found sufficient to support the verdict as to one of the plaintiffs in error but insufficient as to the other.

A Writ of Error to the Circuit Court for Taylor County; Hal W. Adams, Judge.

Judgment affirmed as to Moses;

Reversed as to Gordon.

*L. W. Blanton*, for Plaintiffs in Error;

*J. B. Johnson*, Attorney General, and *Roy Campbell*, Assistant, for the State.

ELLIS, C. J.—The plaintiffs in error were indicted September 30, 1926, for the murder of Will Sirmans on August 14, 1926. The defendants pleaded not guilty and were tried and convicted of manslaughter. They seek a reversal

of the judgment on writ of error. There are fourteen assignments of error. All of them relate to the admission and exclusion of testimony and the sufficiency of the evidence to sustain the verdict.

We wish to express our appreciation of the excellent manner in which the transcript of the record was prepared in this case. The paper is of superior quality; the typing is clear, black and the lines double spaced; the arrangement of the matter is in choronological order and is free of many unnecessary repetitions. There are but two unfavorable criticisms that might be made:

One is that the motion for a new trial occurs both in the record proper and in the bill of exceptions. It was unnecessary and improper to have it copied in the record proper. The other criticism is that the testimony is preserved in the bill of exceptions in the form of questions and answers instead of narrative form as the rule requires. See Special Rule 1 Circuit Court-Law Actions. The rule provides as follows: ''In no case shall the testimony be stated in the form of a stenographer's report of testimony, but all testimony inserted shall be in narrative form, omitting all questions to witnesses, provided, every question to a witness which is the basis of some ground for reversal mentioned in the assignment of errors, with its answer, if any, shall be stated at length; and, provided, further, that if the trial Judge shall be *satisfied,* and shall *certify* in such bill that it is *indispensable* that all or part of the testimony of *some particular* witness or witnesses shall be stated in the form of question and answer, in order to enable the appellant court to properly understand or weigh the testimony of *such* witness or witnesses, the question embraced in the particular parts of the testimony so certified, *and those only,* with their answers, may be stated at length.''

The purpose of this rule is obviously in the interest of

efficiency, celerity, accuracy and economy in the disposition of cases in this Court.

In the first place, a written account of a transaction in narrative form is easier to read. It presents the important and controlling facts more succinctly and smoothly than any other method and saves to this Court the tedious, tiresome and unprofitable labor of reading both questions and answers relating to hundreds of unnecessary repetitions.

It is true that to prepare the testimony in narrative form requires more labor on the part of counsel, but surely the non-observance of the rule is not justified on that ground.

Again, the rule does not justify stating all the testimony in the form of a stenographer's report of it but only *some* or all of the testimony of some witness or witnesses may be so stated when the Judge is *satisfied* and shall certify in the bill that it is indispensable that all or a part of the testimony of some particular witness or witnesses shall be stated in the form of questions and answers in order for the Appellate Court to properly understand the testimony of such witness.

It cannot with any degree of seriousness be said that in order for the Justices of this Court to properly understand the testimony of a witness that it is necessary to read pages of questions about matters of no value so far as the relevancy or probative quality of the testimony is concerned. It sometimes happens perhaps that the testimony of a witness is unclear because his thoughts are so disconnected, his speech so defective and mind so unimproved that he does not express himself with sufficient definiteness to be clearly understood. It may be also that sometimes such condition of testimony is the result of deliberate motive on the part of the witness or proceeds from a lack of skill in counsel in the matter of the direct or cross-examination of the witness,

but our observation is that even when such conditions exists it is rarely necessary to have the testimony stated in the form of a stenographer's report of it in order to properly understand it.

We take this opportunity to refer to this most common non-observance of an important rule of this Court, not only because of the many criticisms that are made about the "court's cumbersome procedure, its delays and the expense of litigation" for which the failure to observe the rules of procedure is responsible in very great part, but also because in this case the record is so nearly perfect in every other detail that we might with impunity and without danger of offense to counsel, whom we hold in very high esteem, point out how a record otherwise superior might have been a model of excellence.

The evidence in this case tended to show that the deceased and the two defendants lived in the same neighborhood in Taylor County. The deceased and Gordon Jackson were employees of Brewster Moses. On Saturday, the 14th of August, 1926, Sirmans, Gordon Jackson, Mrs. Moses, Charlie Finney, Henry Main, George Swilley and Peterson Sirmans went to Perry, the county seat of Taylor County. They came in a truck and returned about an hour before sunset. There was some evidence of Sirmans being somewhat intoxicated. He went into his own house where his wife was preparing his supper, sat there for a while and then went to the house of Brewster Moses, was there a short time, returned to his house with Charlie Finney, who ate supper with him. In about two hours Finney left and Sirmans went again to the Moses house, returned in a short time and went to bed.

Moses and Gordon Jackson then came to Sirmans' house and called him. They had taken seats in the "hall" of the house and Sirmans came out to them dressed only in the

underclothes in which he had gone to bed. Some talk occurred about going somewhere to get whiskey and Mrs. Sirmans prevailed upon them not to go. Thereupon Jackson and Moses left and started back to the latter's house. Sirmans said he wanted to go to the "pump" and get a drink of water. His wife was with him. He then said he was going to the Moses house and started in that direction and met both Moses and Jackson at the corner of the lot. Mrs. Sirmans tried to induce her husband to return to the house. A difficulty occurred there between the three men and Jackson hit Sirmans on the head with an axe handle. Sirmans ran to his house, got a single-barrel shotgun and started for the Moses house. His wife was unable to stop him. He fired the gun once, went to the front gate of the Moses yard, went in and was shot down by Brewster Moses and died the following day.

We fail to discover in the evidence any circumstance which could with any degree of certainty connect Gordon Jackson with the homicide. The evidence is clear that the men who appeared in this unfortunate transaction were with the exception of Brewster Moses young, rash, heedless, impetuous people whose excitability doubtless was much increased by the whiskey which they had taken.

Brewster Moses, the man of superior years and experience, should, as he doubtless could, have done much to prevent the killing of Sirmans. Instead it was he, by his own statement, who fired upon Sirmans and killed him.

While the circumstance of one upon another's premises approaching the house with a deadly weapon and a threat upon his lips to kill one or more of the occupants affords at least technical grounds for a plea of justification in taking the life of the protagonist in such a drama, there may be elements in the situation which might rob it of its efficacy. We think they existed in this case.

Moses was an older man than the others; the employer of one or two of them including the deceased. Among them he had doubtless some influence and could in all likelihood have prevented the difficulty out of which grew the death of Sirmans. It is by no means clear that it was necessary for him to kill Sirmans, who, if in reality was seeking to shoot Moses, could have been disarmed and quieted probably by the display of a little courage and firmness which young men of the age of those who were near are supposed at least by themselves to possess.

Certainly it is not unreasonable to say that the defendant Moses might have succeeded in doing so through advice and counsel to the others if he himself was afraid to speak to Sirmans. Instead of making any effort to calm the enraged man whose feelings he himself had helped to arouse a short while before, he stood in his house, in the shadow and protection of his building, and killed the deceased.

There was enough evidence to go to the jury on the question of his justification and enough to sustain a verdict of manslaughter.

The assignments of error on the admission and rejection of testimony are not well taken. The charges given were full and appropriate. Upon an examination of the entire case it appears that the errors complained of have resulted in no miscarriage of justice so far as the defendant Brewster Moses is concerned. See Section 2812, Revised General Statutes 1920. So the judgment as to him is affirmed but it is reversed as to the defendant Gordon Jackson. It is so ordered.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.